## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:20-cr-157 (2) |
| v. : | |
| : | Chief Judge Algenon L. Marbley |
| **NICOLE GEORGES,** : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

This matter is before the Court on the Defendant's Motions to Dismiss the Superseding Indictment. (ECF Nos. 48–49). The Government opposes both Motions. (ECF Nos. 50–51). For the reasons set forth below, Defendant's Motions are **DENIED**.

**I.      BACKGROUND**

On September 22, 2020, the United States returned a fifteen-count indictment against Defendants Jimmy Henry and Nicole Georges. (ECF No. 5). In the initial indictment, Ms. Georges was indicted only for a single offense: soliciting and receiving health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(B). (*Id.* ¶¶ 47–48). The initial indictment alleged that Ms. Georges, as a pharmaceutical representative for Insys Therapeuticals, aided and abetted Dr. Henry in knowingly and willfully soliciting renumeration in return for increasing the number of Subsys prescriptions he wrote. (*Id.* ¶ 48). Subsys is a fentanyl-based sublingual spray. (ECF No. 5 ¶ 32). The alleged kickback scheme arises from Dr. Henry's participation in a "speaking program" conducted by Insys, wherein Henry received payments for his participation. (*Id.* ¶ 39) The indictment alleges that as Dr. Henry participated in the speaker program, the number of prescriptions he wrote for Subsys that were reimbursed through Medicare and Ohio Medicaid rose.

1

(*Id.* ¶ 40). For her part, Ms. Georges allegedly coordinated these speaking arrangements, which included scheduling the event, catering the event, attending the event, collecting sign-in sheets from participants, and submitting documentation to Insys so Dr. Henry would be paid. (*Id.* ¶ 41). The indictment charged Ms. Georges only in connection with coordinating a single event on September 11, 2015. (*Id.* ¶ 48).

On March 23, 2021, Ms. Georges timely filed a motion to sever, arguing that a joint trial could prejudice her because of potential "spillover" effect on the jury. (ECF No. 23). The Government opposed the motion to sever and this Court granted the motion to sever. (ECF Nos. 27–28). Shortly after this Court granted her motion to sever, Ms. Georges waived her right to trial by a jury. (ECF No. 29). This Court then scheduled a bench trial for Ms. Georges to begin on June 21, 2021, leaving the trial for Dr. Henry set on the original date of June 7, 2021. (ECF No. 33). Just over a week after the order setting her case for trial, the Government filed a plea agreement as to Dr. Henry. (ECF No. 35). In accordance with this Court's pretrial deadlines schedule, counsel for both sides filed exhibit lists and the Defendant filed a motion in limine to preclude the government from introducing other act evidence pursuant to Rules 401 and 404(b) of the Federal Rules of Evidence on June 7, 2021. (ECF Nos. 36–38).

The following day—June 8, 2021—the Grand Jury returned a Superseding Indictment against Ms. Georges. (ECF No. 41). The Superseding Indictment charged Ms. Georges with two counts. Count One charged her with conspiracy to defraud the United States and to violate the Anti-Kickback Statute in violation of 18 U.S.C. § 371 for her actions surrounding the speaker program as it pertained to Dr. Henry between October 10, 2014 through at least September 2016. (*Id.* ¶ 22). The Superseding Indictment alleged that Ms. Georges completed prior authorization and Transmucosal Immediate Release Fentanyl Risk Evaluation and Mitigation Strategy (TIRF

REMS) paperwork with patients and submitted documentation to the Insys Reimbursement Center to facilitate payment for the Subsys prescriptions from insurance companies, including Medicare and Ohio Medicaid. (*Id.* ¶ 39). The Superseding Indictment also alleges that Ms. Georges submitted falsified paperwork regarding sham speaking events to Insys, resulting in a total of $60,900 in bribes and kickbacks being paid for Dr. Henry's participation in the program, aided and abetted by Ms. Georges and co-conspirators. (*Id.* ¶ 41). Count Two of the Superseding Indictment charged Ms. Georges with violation of the Anti-Kickback Statute in violation of 42 U.S.C. § 1320a-7b(b)(1)(B), the offense with which she had previously been charged. (*Id.* ¶¶ 42–43).

As a result of the Superseding Indictment, this Court arraigned Ms. Georges again on June 9, 2021. At the arraignment, the Government indicated that it had come into possession of new evidence in November 2020, after Ms. Georges was indicted. (ECF Nos. 43, 45). As a result of the superseding indictment, the June 21, 2021 trial date was continued until September 20, 2021. (ECF No. 44). Now, Ms. Georges has filed two Motions to Dismiss the Superseding Indictment against her. In the first, she argues that the Superseding Indictment should be dismissed pursuant to the Due Process Clause on the grounds of prosecutorial vindictiveness. (ECF No. 48). In the second, she argues that the Government allowed the statute of limitations to expire as to 42 U.S.C. § 1320a-7b(b)(1)(B) and chose to supersede with a broader conspiracy; she also argues that the original indictment is therefore outside the statute of limitations. (ECF No. 49). The Government opposes both of her Motions to Dismiss. (ECF Nos. 50–51). These motions are now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including a motion to dismiss asserting defects in instituting the prosecution or in the indictment. Fed. R. Crim. P. 12(b)(1); *see also United States v. Ogbazion*, No. 3:15-cr-104, 2017 WL 1315813, at *3 (S.D. Ohio Apr. 10, 2017). If the Court finds that "the indictment is legally deficient, the proper result is dismissal of the indictment." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). Alternatively, the Court may "order[ ] the Government to submit a bill of particulars to supplement the allegations in the indictment." *United States v. Jones*, 542 F.2d 661, 666 (6th Cir. 1976). A district court's decision to dismiss an indictment for prosecutorial vindictiveness will be reviewed for abuse of discretion. *United States v. Moon*, 413 F.3d 527, 534 (6th Cir. 2008). A decision on a motion to dismiss premised on statute of limitation grounds will be reviewed *de novo*. *United States v. Grenier*, 413 F.3d 632, 636 (6th Cir. 2008).

## III. LAW & ANALYSIS

### A. Prosecutorial Vindictiveness

Prosecutors have a broad discretion in charging decisions, but that discretion "is not unfettered." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). A prosecutor must comply with the Due Process Clause, which prohibits prosecutors from punishing defendants who exercise protected statutory or constitutional rights. *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (citing *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005)). Here, the Defendant argues that the Government overstepped the bounds of the Constitution when it filed the superseding indictment against her. Ms. Georges argues that there exists a realistic likelihood of vindictiveness motivating the Government's decision to supersede in these circumstances. (ECF

No. 48 at 3–4). The Government, in turn, argues that the superseding indictment was the natural consequence of plea bargaining, rather than an act of vindictive prosecution. (ECF No. 50 at 1).

There are two avenues by which a defendant may assert a claim of prosecutorial vindictiveness that runs afoul of the Due Process Clause. The first avenue—producing objective evidence that the prosecutor acted to punish the defendant, otherwise referred to as "actual vindictiveness"—has not been relied upon by Ms. Georges. *LaDeau*, 734 F.3d at 566 (citing *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)). Success via this avenue is "exceedingly difficult," as it imposes an "onerous burden" on a criminal defendant. *Bragan*, 249 F.3d at 481, 483. Ms. Georges instead invokes the second avenue that there exists a "realistic likelihood of vindictiveness," such that prosecutorial vindictiveness should be inferred. *Bragan*, 249 F.3d at 481–82. To succeed via this approach, a defendant must show that: (1) the defendant exercised a protected right; (2) the prosecutor had some stake in deterring the exercise of that right; and (3) the prosecutor's conduct was somehow unreasonable. *See LaDeau*, 734 F.3d at 566 (citing *Bragan*, 249 F.3d at 482).

If the defendant can establish these elements, a court may presume an improper vindictive motive and the burden then shifts to the government to rebut the presumption with "objective, on-the-record explanations," including discovery of previously unknown evidence or previous legal impossibility. *LaDeau*, 734 F.3d at 566–67 (quoting *Bragan*, 249 F.3d at 482). Where the government fails to present evident sufficient to rebut the presumption of impropriety, the presumption will stand and require proper remedies, including dismissal. *Bragan*, 249 F.3d at 482 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). If the government meets its burden, however, the defendant must prove that the offered justification is merely pretext for actual vindictiveness. *Id.*

5

Ms. Georges argues that she has met her burden here, such that the presumption of prosecutorial vindictiveness should be applied and the superseding indictment should therefore be dismissed. She argues that she exercised her constitutional right to proceed with trial, in lieu of accepting a plea agreement, which triggered the superseding indictment and the addition of the conspiracy charge. (ECF No. 48 at 6). She suggests that, once this Court granted the Defendant's severance motion and her motion in limine had been filed, the Government filed the superseding indictment as "a way to circumvent the Court's ruling granting severance" and allow evidence that could not ordinarily be presented to a jury to be admitted. (*Id.* at 6–7). Ms. Georges argues that the decision to supersede twelve days prior to trial is *per se* unreasonable. (*Id.*).

In response, the Government argues that myriad precedents support the ability of the Government to file a superseding indictment after failed plea negotiations where a defendant is on notice that a superseding indictment could be a potential consequence of the breakdown in negotiations. (ECF No. 50 at 1). The Government states that it offered Ms. Georges a plea and explained that it would seek a superseding indictment if she refused, including as recently as May 2021; when she refused, the Government sought the superseding indictment as planned. (*Id.* at 8–11). It argues that this case is no different factually than cases in which the Supreme Court and the Sixth Circuit have found no constitutional problems. (*Id.* at 16–17). Additionally, the Government argues that Ms. Georges has not identified any protected right, as precedent suggests that there is no prosecutorial vindictiveness where the government's only stake would be avoiding a trial. (*Id.* at 19). The Government also notes that the investigation in this matter continued past the date of the original indictment in September 2020 and a "significant amount" of evidence supporting the additional charge was obtained in the post-indictment period. (*Id.* at 11). Accordingly, the

Government asserts that it acted squarely within the bounds of the Due Process Clause in its plea negotiations with Ms. Georges and in its subsequent decision to supersede the indictment.

This Court must first begin its due process analysis by determining whether Ms. Georges was punished for asserting a protected right. This necessarily begins with determining whether Ms. Georges exercised a protected right. Ms. Georges contends that she exercised her constitutional right to go to trial and also suggests that the Government's actions were taken to circumvent this Court's severance ruling. (ECF No. 48 at 4, 6). As the Government has asserted, this type of prosecutorial vindictiveness claim has been squarely foreclosed by *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). In *Bordenkircher*, the Supreme Court held that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363. The *Bordenkircher* Court noted that this rationale will hold where a defendant is fully informed of the true terms of the plea offer, including the potential consequence of a superseding indictment. *Id.* at 360. It contrasted that situation from one in which a prosecutor brings "without notice . . . an additional and more serious charge after plea negotiations" collapsed. *Id.* at 360–61. Because a prosecutor may indict for more serious offenses and use the dropping of charges as an inducement during plea negotiations, the *Bordenkircher* Court found that the opposite did not violate due process. *Id.*

The Sixth Circuit has "consistently indicated" that when the right relied upon by a defendant in a claim of prosecutorial vindictiveness "is simply the right to go to trial," the addition of new charges after a plea bargain fails cannot serve as the basis for such a claim. *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) (collecting cases). As suggested by the Supreme Court in *Bordenkircher*, the Sixth Circuit has also found that the outcome will differ where the prosecution unliterally imposes a more severe charge outside the "give-and-take" context of plea

7

negotiations. *See LaDeau*, 734 F.3d at 569 (finding basis for prosecutorial vindictiveness claim where defendant was reindicted on a more severe charge without having engaged in plea negotiations "through which [defendant] could negotiate a concession of benefit").

This leaves only the possibility that the Government was punishing Ms. Georges for bringing a successful severance motion. Ms. Georges asserts that the superseding indictment vindictively added a new charge "to increase the government's abilities in its attempt to gain a conviction" but also "tactically to allow the prosecution" to present evidence that would otherwise be excluded. (ECF No. 48 at 6). The Sixth Circuit has noted that "the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution." *LaDeau*, 734 F.3d at 569 (citing *United States v. Goodwin*, 457 U.S. 368, 383 (1982)). For example, a situation in which a defendant wins a successful suppression motion and "force[s] the government to restart its prosecution from square one in order to prevent [the defendant] from going free" can serve as the basis for a presumption of prosecutorial vindictiveness. *LaDeau*, 734 F.3d at 570.

Unlike the circumstances in *LaDeau*, Ms. Georges's severance motion did not force the government to restart its prosecution. The Defendant's argument is premised on the notion that she would have succeeded on her then-pending motion in limine to exclude evidence of other acts. This Court did not have the opportunity to rule on the merits of that motion before the Government superseded the indictment. On these facts, the mere victory on the severance motion followed by a superseding indictment does not suggest that any huge burden had been placed on the prosecution. The Government would have been planning for a trial of her co-defendant, relying on similar evidence, and a severed trial may have been duplicative. But at the time that the Government superseded, Dr. Henry had pled out and so there was no augmented burden to the

8

Government purely from the severance. The Sixth Circuit, relying on the Supreme Court's decision in *Goodwin*, has noted that there is a difference between pretrial filings that inflict "'some' incidental burden on the government's ability to prove its case" and those that inflict "a mortal blow" on the Government's case. *LaDeau*, 734 F.3d at 569 (quoting *Goodwin*, 457 U.S. at 381). Even if Ms. Georges had succeeded on her motion in limine to exclude other act evidence from this trial, she would not have precluded the Government from establishing the conduct it indicted her for in the original indictment: her involvement in the September 2015 Subsys luncheon.

Ms. Georges is unable to establish that she was exercising any protected right in such a way that could trigger prosecutorial vindictiveness. As a result, her motion to dismiss the superseding indictment on the basis of a due process violation (ECF No. 48) is **DENIED**.

### B. Statute of Limitations

Ms. Georges also seeks dismissal of both the superseding indictment and the original indictment on statute of limitations grounds. The statute of limitations period for non-capital offenses is five years. 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed[.]"). For superseding indictments, the statute of limitations stops running when the first indictment is brought; a superseding indictment may be brought "only if it does not broaden the charges made in the first indictment." *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999). Ms. Georges argues that the superseding indictment impermissibly broadens the original indictment and that the original indictment also covers charges falling outside the statute of limitations.

Notice to defendant of the charges is the "touchstone" in determining whether a superseding indictment broadens the original indictment. *Smith*, 197 F.3d at 229 (citing *United*

9

*States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976)). Where an original and superseding indictment are nearly identical, defendants have adequate notice of the charges against them. *Id.* By contrast, an indictment is broadened "when the government, the court, or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006) (quoting *United States v. Duran*, 407 F.3d 828, 842 (7th Cir. 2005)).

Ms. Georges argues that the addition of the conspiracy charge in the superseding indictment impermissibly broadens the scope of the original indictment, such that the superseding indictment must be dismissed. (ECF No. 49 at 2–3). In support of this argument, the Defendant points to the Government's statements during the arraignment that she has now been charged "with a broader conspiracy." (*Id.* at 3 (citing ECF No. 45)). She also argues that the § 1320a-7b(b)(2) charge in the original indictment was out of statute, such that the original indictment was not validly pending. (*Id.* at 3–4).

In turn, the Government argues that the first indictment's Anti-Kickback Statute violation was within the statute of limitations because the statute of limitations runs until a crime is complete and the charged kickback payment facilitated by the Defendant did not "clear" Dr. Henry's bank account until September 24, 2015, which was within the statute of limitations. (ECF No. 51 at 3–4). The Government also notes that payment is only the first part of an Anti-Kickback Statute violation: the payment facilitated by Ms. Georges was made to induce Dr. Henry to prescribe Subsys and Dr. Henry did so until at least July 2017, which the Government argues are overt actions taken well within the five-year period. (*Id.*). Next, the Government argues that Ms. Georges was on "more than sufficient notice of the scope of the conspiracy through the language and allegations in the initial Indictment." (*Id.* at 5).

While the conspiracy charge is new, the underlying conduct as to the conspiracy is substantially the same as the conduct against which Ms. Georges was already called to defend. The original indictment alleges that Dr. Henry, in conspiracy with others, committed healthcare fraud by taking unlawful kickbacks and also alleges that Dr. Henry, Ms. Georges, and other Insys representatives were engaged in a scheme to violate the Anti-Kickback Statute via the speaker program. The charge with which she was originally indicted accuses her of jointly committing a violation of the Anti-Kickback Statute with Dr. Henry. Now, Ms. Georges faces an additional conspiracy to defraud the United States charge stemming from this same course of conduct, on which she has been on notice since the original indictment.

Furthermore, the original indictment against Ms. Georges was timely as to the statute of limitations. "Statutes of limitations normally begin to run when the crime is complete." *Pendergast v. United States*, 317 U.S. 412, 418 (1943). For a violation of § 1320a-7b(b)(1)(B), an individual must: (1) knowingly and willfully solicit or receive any remuneration; (2) in return for purchasing or recommending purchasing, and (3) of any good or item for which payment may be made in whole or in part under a Federal health care program. The payment to Dr. Henry was received on September 24, 2015 and the indictment was returned on September 22, 2020. This payment was made to induce Dr. Henry to prescribe Subsys in a manner for which payment could be made in whole or in part under a Federal health care program. While the speaker program for which this payment allegedly compensated Dr. Henry occurred outside of the statute of limitations, the payment itself would be integral to finding a violation of the Anti-Kickback Statute.

As such, the original indictment was brought within the statute of limitations and the superseding indictment did not impermissibly broaden the original indictment because Ms. Georges was on notice of the allegations against which she must prepare to defend. Accordingly,

her motion to dismiss the superseding indictment on the basis of the statute of limitations (ECF No. 49) is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, this Court **DENIES** the Defendant's Motions to Dismiss the Superseding Indictment (ECF Nos. 48–49).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 30, 2021**