## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:20-cr-157 (2)** |
| **v.** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **NICOLE GEORGES,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the Government's First and Second Motions *in limine*, (ECF No. 59 & 60). The Court issued oral decisions on the motions at the Friday, September 10, 2021 final pretrial conference, but sets forth its reasoning more fully herein. For the following reasons, Government's First Motion is **GRANTED in part, and DENIED in part**, but **WITHOLDS RULING** on admissibility regarding portions of each motion, stylized as the Government's Charging Decisions and Initiatives; and Whether Others Committed the Same Crimes under Rules 401 and 403.

## I.      BACKGROUND

On September 22, 2020, the United States returned a fifteen-count indictment against Defendants Jimmy Henry and Nicole Georges. (ECF No. 5). Only one count, Count Eleven for soliciting and receiving health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(B), includes Ms. Georges. (*Id.* ¶¶ 47–48). On June 8, 2021, the Grand Jury returned a superseding indictment as to Ms. Georges, modifying the existing charges. Ms. Georges is now charged with two counts: Count One for conspiracy to defraud the United States and to violate the anti-kickback statute in violation of 18 U.S.C. § 371; and Count Two for soliciting and receiving health care

kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(B) as well as 18 U.S.C. § 2, which provides for accomplice liability. (ECF No. 41 ¶¶ 42–43).

The superseding indictment alleges that Ms. Georges aided and abetted Dr. Henry in knowingly and willfully soliciting renumeration in return for purchasing, leasing, ordering, and arranging for and recommending the purchase of a significant increase in Subsys prescriptions. (*Id.* ¶ 43). Subsys is a fentanyl-based sublingual spray. (*Id.* ¶ 7). Ms. Georges was previously employed by Insys Therapeuticals, which marketed Subsys. (*Id.* ¶¶ 1, 7).

The alleged kickback scheme arises from Dr. Henry's participation in a "speaking program" conducted by Insys, wherein Henry received payments for his participation. (*Id.* ¶ 34). The indictment alleges that as Dr. Henry participated in the speaker program, the number of prescriptions he wrote for Subsys that were reimbursed through Medicare and Ohio Medicaid rose. (*Id.* ¶ 40).

On September 1, 2021, the Government filed two motions *in limine*. The first raises eight issues, the Government asserts, concerning jury nullification: (1) prohibiting the Defendant from remarking on the list of Government witnesses as well as the Government's decision to call those witnesses; (2) prohibiting Defendant's use of out-of-court statements by Defendant or anyone else offered to prove the truth of the matter asserted; (3) barring Defendant from referencing the Government's decision to charge and pursue certain enforcement strategies; (4) excluding any argument regarding jury nullification; (5) prohibiting the reference of any potential sentence or other collateral consequences; (6) barring Defense counsel from introducing personal opinions of the Defendant; (7) excluding "interview reports prepared by law enforcement to impeach [G]overnment witnesses"; and (8) prohibiting the use of specific examples of good conduct provided to establish a pertinent character trait of Defendant. (ECF 59).

2

The Government's second motion concerns conduct allegedly committed by others: namely, Insys employees. This motion raises two issues: (1) barring Defendant from presenting evidence of similar crimes allegedly committed by other Insys employees as irrelevant; and (2) even if relevant, excluding such acts as unhelpful to the trier of fact under Federal Rule of Evidence 403. (ECF 60).

## II.   STANDARD OF REVIEW

### A.   Motions in Limine

Courts should "exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012). Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders *in limine* which exclude broad categories of evidence should seldom be employed. The better practice is to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-CV-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts ... are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion *in limine* falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2. Additionally, "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*,

713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, this Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

## B. Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed. R. Evid. 401 Advisory Committee's Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Generally, hearsay is inadmissible, unless an exception to the hearsay rule applies. Fed. R. Evid. 801, 802. Evidence that would constitute hearsay for one use may be considered excluded from the definition of hearsay altogether in other instances. For example, a statement by a party opponent is considered "not hearsay," but that same statement offered by the party that made the statement fits squarely within the general prohibition. *Id.*

4

Additionally, relevant evidence of character, character trait, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Finally, Rule 405 permits the introduction of certain character evidence through limited means, in special circumstances. Fed. R. Evid. 405(a), 405(b). Typically, "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Where a relevant character trait is at issue—precisely, "when a person's character or character trait is an essential element of a charge, claim, or defense"—specific instances of relevant conduct may be introduced. Fed. R. Evid. 405(b). It is within this framework that this Court considers the Government's Motions.

### III.    LAW & ANALYSIS

### A.  Government's Failure to Call Certain Witnesses

First, the Government moves to bar the Defendant from referencing the Government's failure to call any witness during its case-in-chief. (ECF No. 59). To support this contention, the Government asserts that strategic or practical reasons may prohibit the Government from calling all of its witnesses. *Id.* Moreover, the Government argues, such comments might confuse the jury. Finally, the prosecution contends that drawing a negative inference—for example, that such omitted testimony would have been adverse to the Government's case—would be impermissible. *Id.* For this last proposition, the Government relies on an out of circuit opinion and a Sixth Circuit decision interpreting Kentucky law. *Id.*

In the Sixth Circuit, the reverse is true. "[A] party, without prior court approval, may make an adverse inference from the other party's failure to call witnesses." *MacNaughton v. United States*, 888 F.2d 418, 423 (6th Cir. 1989) (citing *United States v. Blakemore,* 489 F.2d 193, 195 (6th Cir. 1973)). The propriety of drawing such an adverse inference, however, is not unqualified. In *Blakemore*, the Sixth Circuit held that for a party to draw such an inference two conditions must be satisfied: (1) "the witnesses [must be] peculiarly within the other party's power to produce and [2] … their testimony [must] elucidate the events at issue." *Id.*

Thus, the relevant inquiry is not whether such comments or inferences can be made at all, but instead, whether the witnesses in question are "peculiarly within the power" of the Government "to produce and if their testimony would elucidate the events at issue." *Id.* Implicit in this rule, then, is a rejection of the notion that comments meeting the *Blakemore* test would confuse a jury or that drawing such an adverse inference is improper. Accordingly, the potential comments to be made at trial must be considered in light of the *Blakemore* analysis.

Yet, because it is unclear: (1) whether the Government intends to call all of its witnesses at this stage of the litigation; and (2) whether those witnesses are "peculiarly within the power" of the Government "to produce and if their testimony would elucidate the events at issue," any attempts at the *Blakemore* analysis would be premature. *Id.* Thus, the Government's Motion is **DENIED**.

## B. Defendant's Out-of-Court Statements Offered for the Truth of the Matter Asserted

Next, the Government seeks to preclude the Defendant from introducing her own out-of-court statements offered for the truth of the matter asserted through any witness. (ECF No. 59). Here, the Government points to Rules 801 and 802. *Id.*

Rule 801 provides for both the definition of hearsay as well as explicit exclusions from that rule. The most pertinent here: "An Opposing Party's Statement" under 801(d)(2). Fed. R. Evid. 801(d)(2). While such out-of-court statements are generally considered hearsay, the same are admissible when "offered against an opposing party." *Id.* "When offered by the Defendant, [however], such statements are classic, self-serving inadmissible hearsay." *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013). Thus, "[u]nder Rule 801(d)(2)(A), a party's statement is admissible as non-herasay only if it is offered against that party." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000).

Accordingly, this motion is **GRANTED**.

### C. Jury Nullification and Similar Concerns

The Government also contends that the Defendant should be barred from making arguments that encourage jury nullification, jurors to disregard their oaths, or jurors to fail to follow the law. (ECF No. 59). The Government argues each of these arguments is improper. *Id.*

Jury nullification is the "unreviewable and unreversible power in the jury, to acquit in disregard of the instructions on the law given by the trial judge." *United States v. Dougherty*, 473 F.2d 1113, 1132 (D.C. Cir. 1972). The doctrine embraces the idea that the jury may "as a buffer between the accused and the state … reach a verdict despite what may seem clear [under the] law." *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988). To that end, the jury supplies "play in the joints" within our judicial system by providing "a safety valve for exceptional cases." *Dougherty*, 473 F.2d at 1134.

While juries have the power of nullification, "courts will not encourage this, provide jury instructions acknowledging it, or allow lawyers to argue overtly for it." *Wofford v. Woods*, 969 F.3d 685, 709 (6th Cir. 2020), cert. denied, 141 S. Ct. 1745 (2021). Courts that have considered

whether jury instruction on nullification should be permitted "almost uniformly held that a criminal defendant" has no such right. *United States v. Trujillo*, 714 F.2d 102, 105–06. (11th Cir. 1983) (collecting Circuit cases). This view is shared by the Sixth Circuit. *Krzyske*, 836 F.2d at 1021 ("[W]e are compelled to approve the district court's refusal to discuss jury nullification with the jury. To have given an instruction on nullification would have undermined the impartial determination of justice based on law.").

Flowing from the court's role regarding jury nullification is the role of counsel. While the prohibition against encouraging or instructing the jury on nullification is strongest vis-à-vis the court, the general proscription concerning counsel is also somewhat robust. Accordingly, express appeals for jurors to disregard the law are generally forbidden. For example, in *United States v. Trujillo,* the Eleventh Circuit found that the district court properly excluded defense counsel argument that "notwithstanding the law, [the defendant's] governmental cooperation … entitled him to a not guilty verdict." *Trujillo*, 714 F.2d at 105. *But see United States v. Gallagher*, 83 Fed. App'x 742, 744 (6th Cir. 2003) (affirming the district court decision despite that court's failure to "seriously rein in" defense counsel's argument to "the jury, during his opening and closing statements, virtually to ignore the law and find [defendant] not guilty."). Moreover, indirect appeals are also disfavored. *See, e.g., United States v. Walsh*, 654 Fed. App'x 689, 697 (finding no abuse of discretion regarding the district court's granting of a motion *in limine* precluding defendants "from arguing or presenting evidence on topics" relating to whether the various violated prohibitions against marijuana should be proscribed at all.).

Thus, there is a distinction between the jury's power of nullification and the "court's duty to uphold the law and to apply it impartially." *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988). Accordingly, this Court's fidelity to that duty is consistent with the exclusion of argument explicitly encouraging jurors to disregard applicable law. This Court is hesitant, however, to issue a blanket exclusion concerning all arguments that could conceivably be construed as *encouraging* the jury to disregard its duty. Concerning attempts to advance such indirect arguments, this Court will so rule during trial. To the extent Defendant advances express arguments of jury nullification, this motion is **GRANTED**.

### D. Defendant's Family, Age, Similar Personal Factors

The Government also argues that any evidence or argument regarding Defendant's family, health, age, or other similar personal factors should be barred. (ECF No. 59). Moreover, the Government implies, admitting such aspects of the Defendant may provide a specific vehicle for jury nullification. *Id.* The Government relies on three district court decisions and three out of circuit opinions. *Id.* (citing *United States v. Frazier*, 443 F. Supp 3d 885, 902 (M.D. Tenn. 2020); *United States v. Duval*, 865 F. Supp. 2d. 803, 809 (E.D. Mich. 2012); *United States v. United Memorial Hosp.*, No. 1:01-CR-238 RAE ALL, 2002 WL 32998218, at *2 (W.D. Mich. Aug. 21, 2002); *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2001); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)). The lone Sixth Circuit opinion is an unpublished decision: *United States v. Walsh*, 654 F. App'x 689, 697 (6th Cir. 2016). *Id.*

The Defendant relies on this Court's decision in *United States v. Ledbetter*, 188 F. Supp. 3d 674 (S.D. Ohio 2016) (Marbley, J) *aff'd,* 929 F.3d 338 (6th Cir. 2019). (ECF No. 63). There, Defendant emphasizes, this Court noted the lack of controversy associated with offering

background information presented to provide "an aid to understanding." *Id.* (citing *United States v. Ledbetter*, 188 F. Supp. 3d 674 (S.D. Ohio 2016) (Marbley, J) *aff'd,* 929 F.3d 338 (6th Cir. 2019)).

The standard articulated by this Court in previous decisions is derived from the Advisory Committee's Notes to the 1972 Proposed Rules. These Notes provide helpful instruction. *United States v. Vonn*, 535 U.S. 55, 64, n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee's Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed"); *Beech Aircraft Corp., v. Rainey*, 488 U.S. 153, 165–66, n.9 (1988) (Because "Congress did not amend the Advisory Committee's draft in any way … the Committee's commentary is particularly relevant in determining the meaning of the document Congress enacted."). *See also* H.R. Rep. No. 93-650 (1973) (where congresspeople proposed deleting and amending rules promulgated by the committee but made no mention of Rule 401); S. Rep. No. 93-1277 (1973) (same). The Advisory Committee's Notes state, as set forth above, that "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is *universally offered and admitted* as an aid to understanding." Advisory Committee's Notes on Fed. Rule Evid. 401. (emphasis added). Moreover, the Notes continue, "[a] rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of helpful evidence." *Id.* Thus, while this Court agrees that arguments encouraging impermissible considerations by the jury are generally intolerable, the Government's broad request to keep out all mentions of the Defendant's age, health, family or similar personal factors is better dealt with in the context of a concrete and pointed objection during trial. Accordingly, the Government's Motion is **DENIED**.

10

### E. Potential Punishment or Collateral Consequences

Additionally, the Government asserts that any mention of punishment or collateral consequences stemming from a conviction should be barred. (ECF No. 59).

The Sixth Circuit's holding in *United States v. Bender* is consistent with this request. 265 F.3d 464 (6th Cir. 2001). There, the Court was reviewing a challenge to the district court's ruling that barred defense counsel from making similar comments about punishment during the guilt phase of trial. *Id.* at 472. The Sixth Circuit held that "the district court did not err in prohibiting … counsel from mentioning … possible punishment to the jury." *Id.* The Court buttressed this conclusion by pointing to the Supreme Court case *Shannon v. United States*, 512 U.S. 573, 579 (1994), where the Court noted that "[i]t is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Id.* (internal quotations omitted). *See also United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996) (finding that "argument about possible punishment … [was] foreclosed by well-settled precedent."). Additionally, because punishment, broadly conceived, may include collateral consequences attendant with criminal conviction, it is likewise inappropriate for the jury to consider.

Accordingly, Government's motion to bar comments about potential punishment and collateral consequences is **GRANTED**.

### F. Defense Counsel's Personal Opinion and/or Relationship with Defendant

Next, the Government seeks to exclude the personal opinions as well as information concerning defense counsel's relationship with Defendant, relying on *Wogenstahl v. Mitchell*, 668 F.3d 307, 331–32 (6th Cir. 2012). (ECF No. 59).

11

Simply put, "the personal opinion of counsel has no place at trial." *Irick v. Bell*, 565 F.3d 315, 326 (6th Cir. 2009) (quoting *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996)). Moreover, when "counsel's comments can be reasonably construed to be based on personal belief … [those] statements should be … deemed to be error." *United States v. Bess*, 593 F.2d 749, 756–57 (6th Cir. 1979). Thus, counsel's personal opinions shall be excluded. Additionally, to the extent any comments regarding counsel's personal relationships with any witness "can be reasonably construed to be based on personal opinion," it is inappropriate for trial. *Id.*; *Irick*, 565 F.3d at 326. Accordingly, the Government's motion to exclude personal opinions or counsel's relationship with Defendant is **GRANTED**.

### G. Interview Reports Used to Impeach Government Witnesses

Next, the Government argues that Defendant be precluded from using certain interview reports to impeach Government witnesses. (ECF No. 59). The Government relies on *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005), where the Court reasoned that "[s]uch documents have been held inadmissible for impeaching witnesses on cross-examination because they represent the investigator's selections, interpretations, and interpolations." *Id.* (quoting *United States v. Nathan*, 816 F.2d 230, 236 (6th Cir. 1987) (internal quotations omitted).

While this rule is undoubtedly the law of the circuit, the *Brika* Court went on to explain that not all interview reports are equivalent to FBI 302 reports. *Id.* Thus, those reports—even if prepared by the government—that instead represent a witness statement are *"admissible* for impeachment purposes under Fed. R. Evid. 613(a)." *Id.* (emphasis added). Thus, whether a document stylized as an "interview report" is admissible, at least for impeachment purposes, turns on whether that document constitutes a witness statement.

12

Because the Government provides a potentially broad description of the documents in question ("interview reports"), this Court cannot discern whether such reports are more like 302 reports or more like witness statements. Indeed, this tracks the precise issue discussed in *Brika*. *Id.* Thus, it would be more prudent to postpone this ruling until the issue arises at trial and the Court has the opportunity to examine the impeaching report. This motion is **DENIED**.

### H. Improper Character Evidence

The Government seeks to exclude Defendant from introducing specific instances of good conduct. (ECF No. 59). For this proposition, the Government cites Rules 404 and 405. *Id.* Moreover, the Government, relying on *United States v. Dimora*, 843 F. Supp. 2d 799, 837 (N.D. Ohio 2012), asserts that just because the Defendant acted consistent with the law on some occasions does not disprove that the Defendant acted with criminal intent on another. *Id.*

The Defendant, on the other hand, points to Rule 404(b)(2). (ECF No. 63). There, Defendant rejoins, the same evidence may be used for a separate purpose, *i.e.*, *not* to prove that because Defendant acted in one way in a particular instance that she acted in "accordance with the character" on a separate occasion. *Id.* (citing Fed. R. Evid. 404(b)(1)).

It is well-settled that the Federal Rules of Evidence preclude a litigant from "introduc[ing] character evidence about … specific instances of the person's conduct," generally speaking. *United States v. Silber*, 456 Fed. App'x 559, 562 (quoting Fed. R. Evid. 405(b).). In fact, this type of evidence is typically only admissible when offered by Defendant in her case-in-chief when her "character trait is an essential element of the charge." *Id.* In *Silber,* the Sixth Circuit held that the district court "correctly excluded … [Defendant's] testimony that he received no overbilling notices from Medicare while working in earlier jobs … to show his honest character." *Id.* The Court reasoned that this type of "testimony … falls squarely within

Rule 405's implicit prohibition." *Id.*  Yet, 404(b) explicitly provides for permitted uses. Accordingly, to the extent the Government requests exclusion of specific instances of good conduct consistent with 404(b)'s prohibition—that is, to show that the Defendant displayed good conduct on one particular occasion to demonstrate that she did not act with criminal intent on another—its motion is **GRANTED**.

### I.  Government Charging Decisions and Initiatives; Whether Others Committed Same Crimes under Rules 401 and 403

Finally, the Government requests to bar Defendant from arguing or presenting evidence concerning government charging decisions and other initiatives as well as alleged similar crimes committed by others.  The context of such argument is of fundamental importance.  For example, if such arguments and/or evidence go toward a selective prosecutive claim, admissibility would turn on whether the Defendant had properly preserved the selective prosecution issue. *See United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006).  Yet, the same evidence presented on cross-examination might assist the factfinder in determining the "credibility of that witness' testimony." *Id.* at 580.  As such, it would be more prudent to postpone this ruling until the issue arises at trial and the Court has the opportunity to examine such argument or evidence.   Thus, this Court **WITHOLDS RULING** on these motions.

### IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS in part** and **DENIES in part** the Government's First Motion *in limine*. (ECF No. 59).  Finally, this Court **WITHOLDS RULING**

on the admissibility of specific requests in the Government's First Motion *in limine* (ECF No. 59)

as well as Government's Second Motion *in limine* altogether (ECF No. 60).

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  September 15, 2021**